**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

DAVID PAUL HILL,                    No. 2:16-CV-1651-TLN-CMK

        Plaintiff,

    vs.                                      <u>FINDINGS AND RECOMMENDATIONS</u>

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

        Plaintiff, who is proceeding with retained counsel, brings this action under

42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security.

Pending before the court are plaintiff's motion for summary judgment (Doc. 17) and defendant's

cross-motion for summary judgment (Doc. 21).

/ / /

/ / /

/ / /

/ / /

/ / /

1

# I. PROCEDURAL HISTORY

Plaintiff applied for social security benefits on June 4, 2012. In the application, plaintiff claims that disability began on December 1, 2002. Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on July 29, 2014, before Administrative Law Judge ("ALJ") Dante M Alegre. In an October 23, 2014, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

> 1. The claimant has the following severe impairment(s): degenerative disc disease of the cervical spine;
>
> 2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;
>
> 3. The claimant has the following residual functional capacity: the claimant can perform light work; he can lift and carry 20 pounds occasionally and 10 pounds frequently; he can sit, stand, and walk for 6 hours in an 8-hour day; he can frequently climb, balance, stoop, kneel, crouch, and crawl; he should avoid hazards;
>
> 4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, the claimant can perform his past relevant work as a security guard.

After the Appeals Council declined review on May 17, 2016, this appeal followed.

# II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones

v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## III. DISCUSSION

In his motion for summary judgment, plaintiff argues: (1) the ALJ erred in determining that a number of plaintiff's impairments are not severe; (2) the ALJ erred in evaluating the medical opinions; (3) the ALJ failed to provide sufficient reasons for rejecting his testimony as not credible; (4) the ALJ failed to provide sufficient reasons for rejecting his mother's testimony; (5) the ALJ's residual functional capacity assessment is not supported by substantial evidence; and (6) the ALJ's determination that plaintiff can perform his past relevant work is not based on substantial evidence.

### A.    Severity of Impairments

In order to be entitled to benefits, the plaintiff must have an impairment severe enough to significantly limit the physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c).[1]  In determining whether a claimant's alleged impairment is

---

[1]    Basic work activities include: (1) walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes

sufficiently severe to limit the ability to work, the Commissioner must consider the combined effect of all impairments on the ability to function, without regard to whether each impairment alone would be sufficiently severe.  See Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996); see also 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523 and 416.923.  An impairment, or combination of impairments, can only be found to be non-severe if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.  See Social Security Ruling ("SSR") 85-28; see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28).  The plaintiff has the burden of establishing the severity of the impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings.  See 20 C.F.R. §§ 404.1508, 416.908. The plaintiff's own statement of symptoms alone is insufficient.  See id.

Plaintiff claims that the ALJ erred by not finding the following impairments to be severe: (1) lumbar spine impairment; (2) pain in upper and lower extremities; (3) mental impairments; (4) borderline intellectual functioning; (5) obsessive compulsive disorder; (6) obesity; and (7) carpal tunnel syndrome.

1.    Lumbar Spine Impairment

As to plaintiff's lumbar spine impairment, the ALJ stated:

. . .[W]ith regard to his lumbar spine impairment, diagnostic imaging from October 9, 2007, reflected a diagnosis of mild degenerative disc disease of the lumbar spine area (Exhibit 2F, pp. 4-5).  In spite of this diagnosis, the record reflects no significant complaints of lumbar pain or treatment targeting the lumbar area since the application date.  Indeed, the recent medical records document problems related solely to the claimant's cervical, as opposed to the lumbar, area (Exhibit 16F).  These mild findings and the lack of treatment indicate that his impairment would cause no more than minimal limitations in the claimant's ability to perform work.  Accordingly, the undersigned finds that it is nonsevere.

Without citation to any medical opinion evidence of record, plaintiff argues: "Even mild

_____

in a routine work setting.  See 20 C.F.R. §§ 404.1521, 416.921.

4

impairments at all levels of the lumbar spine can certainly cause pain that has 'more than slight or minimal' effect on Mr. Hill's ability to perform basic work activities, and is, therefore, severe." Plaintiff also argues that "[i]t is entirely possible that Mr. Hill's lumbar spine could have deterioat[ed] over the years. . . ." Plaintiff's speculation about what could or might happen is immaterial in the absence of medical evidence indicating what, if any, effect plaintiff's lumbar spine impairment has on his ability to perform work-related activities. Because plaintiff has pointed to no such evidence, the court finds no error.

### 2. Pain in Upper and Lower Extremities

In arguing that the ALJ erred by failing to consider pain in the upper and lower extremities a severe impairment, plaintiff cites a medical source statement dated April 15, 2014, which documents limitations on his ability to lift, carry, stand, walk, and handle associated with cervical stenosis and degenerative disc disease. This medical source statement, however, is not supported by any references to objective medical findings. Moreover, nothing in the medical source statement indicates that the identified limitations are the result of pain in the extremities.

### 3. Mental Impairments

Plaintiff cites the opinions of two agency reviewing physicians who concluded that plaintiff has severe anxiety and is moderately limited in his ability to maintain attention and concentration for extended periods. Plaintiff, however, neglects to discuss the following portion of the reports:

> The claimant is capable of sustaining attention and concentration to complete simple work. The prior 2007 opinion that the claimant is incapable of sustaining even simple and repetitive work activity for a normal work day or week is given no weight given that the claimant worked in the past, worked in prison, and has no evidence to indicate any deterioration in cognitive functioning.
>
> See Certified Administrative Record, p. 92.

/ / /

Given the lack of evidence that any mental impairment more than minimally affected plaintiff's

1 ability to work, the court finds no error in the ALJ's analysis.

2                 4.   <u>Borderline Intellectual Functioning</u>

3          Plaintiff argues that the ALJ ignored agency examining psychologist Dr. West's

4 diagnosis of borderline intellectual functioning with a full scale IQ score of 75. Plaintiff also

5 notes Dr. West's opinion that plaintiff has the persistence and pace for, at most, part-time work.

6 A review of the hearing decision reflects that, contrary to plaintiff's assertion that the ALJ

7 ignored Dr. West's findings, the ALJ considered Dr. West's assessment as follows:

8            The undersigned notes that the record contains findings from a
           psychological consultative examination conducted on March 27, 2007,
9            [by Dr. West] in conjunction with a prior application for disability benefits
           (Exhibit 1F). . . . Because the assessments of the claimant's functional
10           limitations from that consultative examination report pertain to an
           unrelated application for disability benefits, were made many years prior,
11           and do not account for improvements or changes in the claimant's mental
           condition, the undersigned gives those assessments little weight.
12

13 The ALJ, however, assigned significant weight to the more recent assessment by agency

14 examining psychologist Dr. Richwerger who examined plaintiff in September 2012 and found

15 only mild impairments.

16                 5.   <u>Obsessive Compulsive Disorder</u>

17          Plaintiff argues that the ALJ ignored his obsessive compulsive disorder, which

18 was diagnosed by Dr. West as well as plaintiff's treating physician. The court does not agree.

19 The hearing decision reflects that the ALJ carefully considered medical evidence related to

20 limitations imposed by plaintiff's mental impairments. While plaintiff was indeed diagnosed

21 with obsessive compulsive disorder, such a diagnosis alone does not establish severity. Rather,

22 plaintiff bears the burden of providing medical evidence in this regard, and plaintiff has failed to

23 do so.

24 ///

25 ///

26

6. Obesity

According to plaintiff, the ALJ ignored his obesity. In 1999, obesity was removed from the Listing of Impairments.[2]  Obesity may still enter into a multiple impairment analysis, but "only by dint of its impact upon the claimant's musculoskeletal, respiratory, or cardiovascular system." Celaya v. Halter, 332 F.3d 1177, 1181 n.1 (9th Cir. 2003).  Thus, as part of his duty to develop the record, the ALJ is required to consider obesity in a multiple impairment analysis, but only where it is "clear from the record that [the plaintiff's] obesity . . . could exacerbate her reported illnesses." Id. at 1182; see also Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005) (distinguishing Celaya and concluding that a multiple impairment analysis is not required where "the medical record is silent as to whether and how claimant's obesity might have exacerbated her condition" and "the claimant did not present any testimony or other evidence . . . that her obesity impaired her ability to work").  Again, the court finds no error because plaintiff has failed to provide any evidence that his obesity exacerbated other conditions resulting in more than a minimal impact on plaintiff's ability to perform work-related activities.

7. Carpal Tunnel Syndrome

Plaintiff cites a diagnosis of carpel tunnel syndrome and concludes that the ALJ erred in determining this impairment was not severe.  Again, plaintiff cites no medical evidence showing what effect, if any, this condition has on his ability to perform work-related activities.

**B.    Medical Opinions**

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual,

---

[2]    Under SSR 02-01p, a person with body mass index ("BMI") of 30 or above is considered obese.  BMI is the ratio of an individual's weight in kilograms to the square of height in meters (weight divided by square of height).

than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester, 81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  See id. at 831.  In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

/ / /

/ / /

Plaintiff argues that the ALJ erred with respect to evaluation of opinions from his treating medical providers at Harmony Health, Dr. Chin and Physician's Assistant Xiong. Plaintiff also argues that the ALJ erred with respect to Dr. West and agency reviewing doctors discussed above.

### 1.  Harmony Health

As to plaintiff's treating providers at Harmony Health, the ALJ stated:

> The undersigned gives little weight to the medical source statements of certified physician's assistant Kheng Xiong and Benson Chin, M.D., both of whom assessed the following functional limitations: the claimant could lift and carry 20 pounds occasionally and 10 pounds frequently; he could stand and walk for 2 hours in an 8-hour workday; he could sit for 6 hours in an 8-hour workday; he could work a maximum of 4 hours per day; he could frequently balance, stoop, kneel, crouch, and crawl; he could occasionally climb, reach, handle, and finger; he is restricted from working near chemicals, dust, and extreme temperatures; and he needs to constantly turn his head (Exhibit 17F, pp. 3-4).  Their assessments of the claimant's limitations is unsupported by the objective medical evidence illustrating relatively benign findings with respect to the claimant's back pain and the conservative treatment record.  Moreover, the degree of their limitations conflicts with the evidence of the claimant's increased capabilities at performing household chores, driving a vehicle, and sitting in a chair for extended durations (Exhibits 3E and 9E; and Hearing Testimony).

Challenging the ALJ's assessment that these providers' assessments are inconsistent with the objective evidence, plaintiff points to his diagnoses of cervical spinal stenosis and degenerative disc disease and a January 2014 CT scan which revealed severe degenerative disc disease.  As to the nature of his course of treatment, which the ALJ described as "conservative," plaintiff notes treatment for neck and back pain including pain medications, physical therapy, and epidural injections.  Plaintiff adds that surgery was suggested, which he says he may opt for following updated scans.

Again, the relevant inquiry is into the limitations posed by plaintiff's impairments.  Though plaintiff has noted evidence which certainly supports the Harmony Health providers' diagnoses, the ALJ correctly focused on whether the limitations indicated by the evidence supports the providers' functional assessment that plaintiff can only work on a part-time basis

(i.e., a maximum of 4 hours per day). In this regard, the ALJ was entitled to resolve conflicts in the evidence, specifically conflicting medical opinions based on the same objective observations. The ALJ properly did so in this case by noting that x-ray imaging from August 2012 showed mild degenerative disc disease of the cervical spine, which plaintiff's treating doctor described as "nothing serious." Plaintiff was prescribed pain medication as needed. While the January 2014 CT showed severe degenerative disc disease, plaintiff's treating doctors prescribed a continuing conservative course of treatment including increased dosages of pain medication, cold packs, moist heat, massage, neck exercises, and a soft cervical collar. Additionally, though the doctors discussed pain management, physical therapy, and epidural injections with the claimant, the record does not indicate that such treatment was ever followed, contrary to plaintiff's suggestion.[3]

## 2.    Dr. West and Agency Reviewing Doctors

As discussed above, Dr. West and an agency reviewing doctor opined in 2007 that plaintiff had moderate limitations in areas of mental functioning. As also discussed above, the ALJ rejected these opinions in favor of the more recent evaluation by Dr. Richwerger, who opined that plaintiff has no more than mild limitations. The ALJ concluded: "The undersigned finds that the recent results from Dr. Richwerger's examination and his opinions are a more reliable assessment of the claimant's functional abilities." Plaintiff cites no authority in support of the position that an ALJ errs by rejecting stale medical reports in favor of newer reports reflecting a claimant's current limitations.

///

///

_____

[3]    Plaintiff cites the following pages from the administrative record in support of his contention that he received physical therapy and epidural injections: 414-15, 416-18, 420-21, 451, 460, and 466. The only reference to such treatment options in these records is at page 421 where plaintiff's treating provider states: "Patient will let me know if he wants to see pain management for injections or for neurosurgeon evaluation." None of the portions of the record cited by plaintiff indicate anything more than conservative treatment was ever pursued.

## C.    <u>Plaintiff's Credibility</u>

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons.  See <u>Saelee v. Chater</u>, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit credibility finding must be supported by specific, cogent reasons.  See <u>Rashad v. Sullivan</u>, 903 F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony.  See <u>id.</u>  Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing."  See <u>id.</u>; see also <u>Carmickle v. Commissioner</u>, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing <u>Lingenfelter v Astrue</u>, 504 F.3d 1028, 1936 (9th Cir. 2007), and <u>Gregor v. Barnhart</u>, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.  See <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in <u>Smolen v. Chater</u>:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof.  Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom.  By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the <u>Cotton</u> test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.
>
> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in <u>Cotton v. Bowen</u>, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions.  See <u>Bunnell</u>, 947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent

testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding reliance on a claimant's daily activities to find testimony of disabling pain not credible, the Social Security Act does not require that disability claimants be utterly incapacitated. See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989). The Ninth Circuit has repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . . does not . . .[necessarily] detract from her credibility as to her overall disability." See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"). Daily activities must be such that they show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair, 885 F.2d at 603. The ALJ must make specific findings in this regard before relying on daily activities to find a claimant's pain testimony not credible. See Burch v.

Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

As to plaintiff's testimony, the ALJ stated:

> The claimant alleged that he experiences severe and recurrent neck pain, which affects his ability to lift, squat, bend, stand, reach walk, sit, kneel, climb stairs, and concentrate (Exhibit 3E, p. 9; and Hearing Testimony). According to the claimant, he can walk up to 50 feet until he feels the need to rest and, based on his purported difficulty at lifting a gallon of milk, could lift no more than two pounds with his right hand and 10 pounds with his left (Exhibit 3E, p. 9; and Hearing Testimony). He also alleged that he drops things often, cannot turn his neck, experiences difficulty getting up from a chair unassisted, and needs to lie down 6 to 10 times per day. (Hearing Testimony).

In finding plaintiff's testimony not credible, the ALJ stated:

> Observations of the claimant during the administrative hearing weigh against the credibility of his allegations. The undersigned notes that contrary to the claimant's assertions, he remained comfortably seated throughout the proceedings and demonstrated an ability to rise from his chair. Furthermore, the claimant's assertions regarding his frequent need to lie down and his extremely diminished ability to lift a gallon of milk contrasts with the opinions of his medical providers, both of whom opined that he could at least occasionally lift up to 20 pounds and did not need to lie down (Exhibit 17F, pp. 3-4). Moreover, the claimant's apparent attempt to evade a drug-screening test on February 5, 2013, by reportedly spilling his urine sample and departing before another could be provided also speaks to his honesty and character (Exhibit 8F). Despite disclaiming any drug use, the claimant later tested positively for methamphetamine on February 20, 2013 (Exhibit 8F, p. 8). These examples, while not entirely illustrative of the claimant's believability, are other factors taken into consideration in weighing his credibility.

Finally, the ALJ noted the objective evidence and plaintiff's conservative course of treatment, both discussed above, were inconsistent with plaintiff's testimony of disabling pain.

In weighing credibility, the Commissioner may also consider the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony. See Thomas, 278 F.3d at 958-59. The ALJ properly did so in this case by noting plaintiff's inconsistent statements regarding drug use, specifically that despite denying drug use in early February 2013 he tested positive for methamphetamine in late February 2013. Additionally, as the ALJ noted, plaintiff's allegation that he needs assistance to rise from a chair is inconsistent

13

with observations at the hearing. Finally, plaintiff's allegation regarding his inability to pick up a gallon of milk is inconsistent with his own treating providers' assessment.

With respect to plaintiff's course of treatment, plaintiff once again states that he "received several kinds of treatment for his neck and back pain including pain medications, physical therapy, and epidural injections." Of these treatment options, the record only reflects that plaintiff was prescribed medications. Plaintiff has not produced any evidence that he received physical therapy, and indeed the record contains no documentation of physical therapy. Plaintiff also has not produced any evidence that he received epidural injections associated with the current claim.[4]

### D. Lay Witness Evidence

In determining whether a claimant is disabled, an ALJ generally must consider lay witness testimony concerning a claimant's ability to work. See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e). Indeed, "lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment." See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). Consequently, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." Dodrill, 12 F.3d at 919. The ALJ may cite same reasons for rejecting plaintiff's statements to reject third-party statements where the statements are similar. See Valentine v. Commissioner Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (approving rejection of a third-party family member's testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's complaints).

/ / /

/ / /

---

[4] In fact, the record indicates that plaintiff refused injections because he had tried them in the past and had negative side effects.

1    Plaintiff's mother, Valerie LaFontsee, provided testimony which the ALJ

2  discussed as follows:

3        The undersigned has read and considered the Third Party Function Report
         submitted by the claimant's mother, who stated that the claimant's
4        condition affects his ability to lift, squat, bend, stand, reach, walk, sit, and
         kneel (Exhibit 9E). The undersigned finds that the claimant's mother's
5        descriptions of the claimant's limitations are inconsistent with the medical
         evidence indicating a functional capacity greater than that alleged by the
6        claimant. . . .

7  Citing one of the primary reasons for rejecting plaintiff's testimony, the ALJ properly rejected

8  Ms. LaFontsee's testimony. Plaintiff's repetition of the arguments addressed above is

9  unpersuasive.

10    **E.    Residual Functional Capacity**

11    Residual functional capacity is what a person "can still do despite [the

12 individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v.

13 Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current

14 "physical and mental capabilities"). Thus, residual functional capacity describes a person's

15 exertional capabilities in light of his or her limitations.[5]

16 / / /

17 / / /

18 / / /

19

20        [5]    Exertional capabilities are the primary strength activities of sitting, standing,
   walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to
21 perform sedentary, light, medium, heavy, or very heavy work. See 20 C.F.R., Part 404, Subpart
   P, Appendix 2, § 200.00(a). "Sedentary work" involves lifting no more than 10 pounds at a time
22 and occasionally lifting or carrying articles like docket files, ledgers, and small tools. See 20
   C.F.R. §§ 404.1567(a) and 416.967(a). "Light work" involves lifting no more than 20 pounds at
23 a time with frequent lifting or carrying of objects weighing up to 10 pounds. See 20 C.F.R. §§
   404.1567(b) and 416.967(b). "Medium work" involves lifting no more than 50 pounds at a time
24 with frequent lifting or carrying of objects weighing up to 25 pounds. See 20 C.F.R. §§
   404.1567(c) and 416.967(c). "Heavy work" involves lifting no more than 100 pounds at a time
25 with frequent lifting or carrying of objects weighing up to 50 pounds. See 20 C.F.R. §§
   404.1567(d) and 416.967(d). "Very heavy work" involves lifting objects weighing more than
26 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more.
   See 20 C.F.R. §§ 404.1567(e) and 416.967(e).

15

1  Citing the functional limitations opined by Dr. West and the Harmony Health

2  providers, plaintiff argues that the ALJ's residual functional capacity assessment is not based on

3  substantial evidence.  For all the reasons discussed above, however, the ALJ properly gave little

4  weight to those medical opinions.  Similarly, plaintiff's repetition of his arguments regarding the

5  ALJ's severity determination are unpersuasive.

6  **F.**    **Past Relevant Work**

7  Regarding past relevant work, the ALJ stated:

8  Based on the claimant's vocational background documents in the record,
   the claimant's testimony, his work history report, and the testimony of the
9  vocational expert, the undersigned finds that the claimant worked within
   the last 15 years in the following occupations as referenced in the
10 Dictionary of Occupational Titles (DOT) at substantial gainful activity
   levels:

11
       1.    Security Guard, DOT 372.667-034, which is a light, semi-
12           skilled (SVP 3) occupation as generally performed pursuant
             to the DOT, but actually performed as sedentary work as
13           described by the claimant; and

14     2.    Operating Engineer, DOT 859.683-010, which is a
             medium, skilled (SVP 6) occupation as generally performed
15           pursuant to the DOT, but actually performed as light work
             as described by the claimant.

16
   In comparing the claimant's residual functional capacity with the physical
17 and mental demands of his past relevant work as a security guard, the
   undersigned finds that the claimant is able to perform it as actually and
18 generally performed.  The undersigned relies on the evidence
   demonstrating that such work, as reported in the DOT, is generally
19 performed at an exertional level no more restrictive than the claimant's
   residual functional capacity, and that the claimant actually performed such
20 work at a sedentary level.

21 Citing Social Security Rulings 82-61 and 82-62, plaintiff argues that the ALJ failed to recognize

22 the "composite nature" of his past work.  Specifically, plaintiff contends that his past work as a

23 security guard was a composite job because it also required occasional cleaning and maintenance

24 duties.  As defendant notes, however, the DOT description relied on by the ALJ indicates that the

25 job may include janitorial duties.  Therefore, the ALJ properly accounted for the "composite"

26 nature of the job as actually performed and generally performed.

**IV. CONCLUSION**

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, the undersigned recommends that:

　　　　1.　　Plaintiff's motion for summary judgment (Doc. 17) be denied;

　　　　2.　　Defendant's cross-motion for summary judgment (Doc. 21) be granted; and

　　　　3.　　The Clerk of the Court be directed to enter judgment and close this file.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  August 31, 2017

　　　　　　　　　　　　　　　　　　　　　　　　　　
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE